# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

WAYNE HARLEY WHITE,          )
                                 )
       Petitioner,             )
                                 )
v.                              )     Case No. 17-CV-0173-TCK-JFJ
                                 )
SCOTT CROW,[1]                )
                                 )
       Respondent.         )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 1) filed by petitioner Wayne Harley White, a state prisoner appearing pro se.[2]  White seeks federal habeas relief from the state-court judgment entered against him in the District Court of Delaware County, Case No. CF-2012-182.  He claims his current custody under that judgment violates the Constitution because (1) he received ineffective assistance of counsel, (2) the trial court erroneously instructed the jury on the range of punishment, (3) the trial court improperly admitted evidence of other crimes or bad acts, (4) the trial court erroneously excluded evidence relevant to his defense, (5) he received an excessive sentence, and (6) the cumulative effect of these errors deprived him of a fair trial.  Respondent Scott Crow filed a response (Dkt. 7) in opposition to the petition and provided copies of the state-court record (Dkts. 7, 8, 9) necessary to adjudicate White's

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Scott Crow, Director, Oklahoma Department of Corrections, in place of Joe Allbaugh, the ODOC's former director, as party respondent.  The Clerk of Court shall note this substitution on the record.

[2] Because White appears pro se, the Court liberally construes his pleadings.  *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).  To the extent White's arguments in his petition are unclear, the Court also has considered the arguments presented in the appeal brief (Dkt. 7-1) he filed in the Oklahoma Court of Criminal Appeals.

claims.  White filed a reply (Dkt. 17).  Following review of the case materials and applicable law, and for the reasons that follow, the Court finds that White is not entitled to federal habeas relief and denies the petition for writ of habeas corpus.

## I.

In May 2012, the State of Oklahoma charged White with one count of child sexual abuse, in violation of Okla. Stat. tit. 21, § 843.5(E) (2011).  Dkt. 8-1, O.R. vol. 1, at 6 [1].[3]  The trial court appointed Lee Griffin, an attorney with the Oklahoma Indigent Defense System (OIDS), to represent White.  *Id.* at 24 [13], 27 [16].  In a supplemental information filed June 18, 2012, the State alleged that White had three prior felony convictions.  *Id.* at 28 [17].

In August 2012, White, represented by Griffin, voluntarily waived his right to a preliminary hearing.  *Id.* at 56 [45]; Dkt. 8-4, Tr. Prelim. Hr'g Waiver, at 1-4.  White submitted a letter to the state district court on November 20, 2012, complaining about Griffin's representation.  Dkt. 8-1, O.R. vol. 1, at 60 [49].  One month later, White submitted a letter indicating his intent to accept a plea offer from the State and requesting release on an "OR bond" so he could "get [his] affairs in order."  *Id.* at 62 [51].  On February 4, 2013, White, represented by Griffin, appeared before the trial court and knowingly and voluntarily waived his right to a jury trial.  *Id.* at 65-66 [54-55]; Dkt. 8-5, Tr. Waiver of Jury Trial, at 1-3.  Griffin advised the court that White intended to enter a plea pursuant to an agreement with the State, and the trial court set the matter for a plea hearing on February 13, 2013.  Dkt. 8-5, Tr. Waiver of Jury Trial, at 3.  The plea hearing was later continued, and, on Griffin's application, the trial court ordered a competency evaluation for White.  Dkt. 8-1,

---

[3] For consistency, all of the Court's citations to the state court record and briefs refer to the CM/ECF header docket entry number and pagination.  However for citations to the original record (O.R.) and transcripts from state court proceedings, the Court also includes the original page number in brackets if that number differs from the CM/ECF header page number.

O.R. vol. 1, at 67-72 [56-61].  The trial court held a competency hearing on April 11, 2013, heard testimony from White and the forensic psychologist who evaluated White, determined White was competent to stand trial, and set the case for a jury trial to begin July 29, 2013.  Dkt. 8-8, Tr. Competency Hr'g, at 3-26.  The trial was later continued to October 14, 2013.  Dkt. 8-1, O.R. vol. 1, at 87.

On September 25, 2013, White filed a written motion seeking Griffin's dismissal, and the trial court held a hearing on the motion.  Dkt. 8-1, O.R. vol. 1, at 92-97 [81-86].  The court minutes from that hearing reflect that the trial court heard arguments, ordered the trial date stricken, allowed Griffin to withdraw and appointed Kathy Baker, an attorney with the OIDS, to represent White.  *Id.* at 97 [86].

On January 13, 2014, White, represented by Baker, appeared before the trial court on the regular scheduled felony disposition docket and requested a jury trial.  Dkt. 8-1, O.R. vol. 1, at 102 [91].  The trial court set the jury trial for February 18, 2014.  *Id.*  On January 14, 2014, White moved to dismiss Baker, alleging she was ineffective.  *Id.* at 106-07 [95-96].  The trial court held a hearing on White's dismissal motion the same day it was filed and denied the motion.  Dkt. 8-9, Tr. Mot. Hr'g, at 1-6.  Baker continued to represent White until February 10, 2014, when the trial court granted Baker's motion to withdraw from the case.  Dkt. 8-1, O.R., vol. 1, at 126 [115].  Baker's motion alleged that she attempted to meet with White several times to prepare for trial, that he had been unreasonable and unwilling to work with her and that White "became belligerent" and "yelled and swore obscenities" at Baker on February 7, 2014, and "fired" her.  *Id.* at 129-30 [118-19].  The trial court reset the jury trial for March 31, 2014, and appointed J. Ken Gallon, an attorney with the OIDS, to represent White.  *Id.* at 131 [120], 133 [122], 147 [136].

White's case proceeded to a jury trial in April 2014, and Gallon represented White at trial.

Dkt. 8-10, Tr. Trial vol. 1, at 1.  Highly summarized, the evidence presented at trial established that White sexually abused his stepdaughter, C.C., on multiple occasions over a period of several months, when C.C. was 13 years old and White was 49 years old.  Dkt. 8-10, Tr. Trial vol. 1, at 116, 122, 135-45, 151-59, 164-81, 184-85, 191-99, 203, 228-32; Dkt. 8-11, Tr. Trial vol. 2, at 9-10 [248-49], 16-17 [255-56], 19 [258], 97 [336].[4]  White's theory of defense was that C.C. lied. Dkt. 8-10, Tr. Trial vol. 1, at 115, 212; Dkt. 8-12, Tr. Trial vol. 4, at 32-41 [394-403].  At the conclusion of the trial, the jury found White guilty of one count of child sexual abuse, in violation of Okla. Stat. tit. 21, § 843.5(E) (2011), found that he had two prior felony convictions,[5] and affixed punishment at 40 years' imprisonment.  Dkt. 8-12, Tr. Trial vol. 3, at 53 [415], 56 [418], 61 [423].  On May 7, 2014, the trial court sentenced White accordingly.  Dkt. 8-14, Tr. Sentencing Hr'g, at 3.

Represented by Katrina Conrad-Legler, an appellate attorney with the OIDS, White filed a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), raising six propositions of error.  Dkt. 7-1, Pet'r's, Appeal Br., at 1-4.  He claimed (1) he was deprived of his Sixth Amendment right to the effective assistance of counsel because all three attorneys performed deficiently with respect to plea negotiations and Gallon performed deficiently at trial by failing to object to the admission of other-crimes evidence and certain jury instructions, (2) he was deprived of his Fourteenth Amendment right to due process because the trial court erroneously instructed the jury as to the range of punishment, (3) he was deprived of his fundamental right to a fair trial because the trial court admitted prejudicial other-crimes evidence, (4) he was deprived of his Fifth,

---

[4] Additional facts relevant to White's specific claims will be further developed in the analysis section of this opinion.

[5] Neither prior conviction involved a sex offense; one was for driving under the influence and one was for felony domestic assault and battery.  Dkt. 8-12, Tr. Trial vol. 3, at 56 [418].

Sixth and Fourteenth Amendment rights to present a defense because the trial court improperly excluded evidence relevant to his defense, (5) he was given an excessive sentence, and (6) the cumulative effect of trial errors deprived him of a fair trial. Dkt. 7-1, Pet'r's Appeal Br., at 3-4, 14-19.

White filed an application for an evidentiary hearing on his ineffective-assistance-of-counsel claim. Dkt. 7-2, Appl. for Evid. Hr'g, at 2. With his application, White submitted several exhibits drawn from his case file documenting plea offers that were made by the State, communicated to White by Griffin and Baker, and never finalized. *Id.* at 14-70. The OCCA granted White's request for an evidentiary hearing and identified six specific issues for the trial court to address at the hearing. Dkt. 7-4, OCCA Order (May 28, 2015), at 1-5. All six issues related to whether White's third attorney, Gallon, performed deficiently during plea negotiations. *Id.* at 2-3. Following the hearing, the trial court entered an order stating its findings of fact and conclusions of law. Dkt. 7-5, District Court Order (Aug. 5, 2015), at 1-6.

In an unpublished summary opinion filed July 6, 2016, the OCCA denied relief as to all six propositions of error and affirmed White's judgment and sentence. Dkt. 7-8, *White v. State*, Case No. F-2014-407 (Okla. Crim. App. July 6, 2016) (unpublished) (hereafter "OCCA Op."), at 1-5. Proceeding pro se, White filed a petition for rehearing, and the OCCA denied the petition. Dkt. 7-9, Pet. for Reh'g, at 1. White did not seek further direct review by filing a petition for writ of certiorari in the United States Supreme Court and he did not pursue any postconviction remedies in state court. Dkt. 1, Pet., at 3; Dkt. 7, Resp., at 2.

Proceeding pro se, White filed the instant federal habeas petition on April 3, 2017. Dkt. 1, Pet., at 1. He seeks federal habeas relief on the same six claims he presented to the OCCA on direct appeal. *Id.* at 5-27.

5

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) a federal court may grant habeas relief to a prisoner in custody pursuant to a state-court judgment "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This means that a federal court may not grant habeas relief on the basis of a state law error. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." (emphasis in original)). Before a federal court may grant habeas relief, a state prisoner must exhaust available state-court remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts." *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). And, in most cases, the prisoner must file the federal habeas petition within one year of the date on which his state-court judgment became final. 28 U.S.C. § 2244(d)(1)(A).

Even when a state prisoner timely files a federal habeas petition and presents only properly exhausted federal claims, the AEDPA strictly limits a federal court's review of those claims. As relevant here, when a state court has adjudicated the merits of a federal claim, a federal court may grant habeas relief only if the petitioner demonstrates that the state court's adjudication of those claims either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, *id.* § 2254(d)(2). As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."

*Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  If there is no clearly established Federal law governing the petitioner's claim, the federal habeas court has no need to "ask whether the state court decision is either contrary to or an unreasonable application of such law."  *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).  If there is clearly established Federal law, a state court's decision is contrary to it only "if: (a) 'the state court applies a rule that contradicts the governing law set forth in Supreme Court cases'; or (b) 'the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent.'"  *Id.* (quoting *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006)).

When the state court's decision "'identifies the correct governing legal principle' in existence at the time," the only question under § 2254(d)(1) "whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'"  *Cullen v. Pinholster*,  563 U.S. 170, 182 (2011) (quoting *Terry Williams*, 529 U.S. at 413).   An "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong; even clear error will not suffice."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer*, 538 U.S. at 75-76).  Thus, to support a claim that the state court unreasonably applied clearly established federal law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Under § 2254(d)(2), a petitioner must show that the state court's decision is based on "an unreasonable determination of the facts" that were developed in the state court proceeding.  "A state-court decision unreasonably determines the facts if the state court 'plainly misapprehend[ed]

or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim.'" *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1170-72 (10th Cir. 2011)).  In addition, the AEDPA requires a federal court to presume the correctness of the state court's factual findings unless the state prisoner rebuts that presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The United States Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)."  *Burt v. Titlow*, 571 U.S. 12, 18 (2013).  However, it has held that under § 2254(d)(2) "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Together, both subsections of § 2254(d) "stop[] short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings."  *Richter*, 562 U.S. at 102. Congress made § 2254(d)'s standards "difficult to meet" for a reason:  "to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions."  *Id.* at 102-03. In contrast, federal habeas courts provide a forum for state prisoners to obtain relief from "extreme malfunctions in the state criminal justice systems."  *Id.* at 102.

### III.

As previously stated, White asserts the same six claims he raised, and the OCCA adjudicated on the merits, on direct appeal:  (1) he was deprived of his Sixth Amendment right to the effective assistance of counsel, (2) a jury-instruction error deprived him of his Fourteenth Amendment right to due process, (3) the erroneous admission of other-crimes evidence deprived him of his fundamental right to a fair trial, (4) the improper exclusion of evidence relevant to his defense deprived him of his Fifth, Sixth and Fourteenth Amendment rights to present a defense,

(5) he received an excessive sentence, and (6) the cumulative effect of trial errors deprived him of a fair trial.  Dkt. 1, Pet., at 5-27.

Respondent Scott Crow concedes, and the Court finds, that White exhausted available state remedies as to each of his claims and filed his habeas petition within the one-year statute of limitations.  Dkt. 7, Resp., at 2.  But Crow contends that White is not entitled to federal habeas relief because some of his claims assert only errors of state law and, to the extent White asserts cognizable federal habeas claims, 28 U.S.C. § 2254(d) bars relief because the OCCA's decisions as to his federal claims are neither contrary to nor an unreasonable application of federal law and are not based on an unreasonable determination of the facts.  *Id.* at 7-37.

## A.      Claim one:  ineffective assistance of counsel

White first claims that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, as that right was interpreted by the U.S. Supreme Court in *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012), because his first and second attorneys, Lee Griffin and Kathy Baker, "faltered in their duty to effectively represent" him during plea negotiations with the State.  Dkt. 1, Pet., at 5-6.

The Sixth Amendment guarantees a defendant's right to the assistance of counsel in criminal proceedings.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  Generally, to establish a Sixth Amendment violation, a defendant must demonstrate deficient performance and resulting prejudice.  *Id.* at 687.  "The proper measure of attorney performance [is] simply reasonableness under prevailing professional norms."  *Id.* at 688.  And resulting prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 693-94.

9

In *Lafler* and *Frye*, the Supreme Court provided guidance on how to apply *Strickland*'s two-part analysis when the alleged ineffectiveness occurs during plea negotiations.  In *Frye*, the Supreme Court fleshed out the performance prong, holding "that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms that may be favorable to the accused." 566 U.S. at 145.  The *Frye* Court also explained how to assess resulting prejudice, stating,

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

566 U.S. at 147.  But *Frye* involved a situation where the defendant ultimately pleaded guilty and then claimed counsel was ineffective for not communicating an earlier, more favorable plea offer. *Id.* at 148.  In *Lafler*, the Supreme Court confronted a different set of facts:  on advice of counsel, the defendant in *Lafler* rejected a plea offer, was convicted at trial, and received a harsher sentence than he would have had he accepted the plea offer.  566 U.S. at 174.  Because all parties in *Lafler* conceded that counsel performed deficiently in advising the defendant to reject the plea, the *Lafler* Court did not address *Strickland*'s performance prong.  *Lafler*, 566 U.S. at 174.  Instead, the sole question before the *Lafler* Court was "how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Lafler*, 566 U.S. at 163.  The *Lafler* Court held that in those circumstances a defendant asserting a Sixth Amendment claim

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the

> defendant would have accepted the plea and the prosecution would not have
> withdrawn it in light of intervening circumstances), that the court would have
> accepted its terms, and that the conviction or sentence, or both, under the offer's
> terms would have been less severe than under the judgment and sentence that in
> fact were imposed.

*Lafler*, 566 U.S. at 164.

In his habeas petition, White alleges Griffin failed to convey a plea offer.  Dkt. 1, Pet., at 6.  He alleges Baker conveyed a plea offer for a life sentence with all but the first 12 years suspended but Baker "never proceeded further in finalizing the agreement to enter a plea beyond filling out paperwork that she never [gave] to [White] to sign."  *Id.*  According to White, Baker also withdrew from the case without conveying to the State that White had accepted the plea offer and without informing White's third attorney, Gallon, of the offer and White's acceptance.  *Id.* at 6-9.

White framed his Sixth Amendment claim differently when he presented it to the OCCA on direct appeal.  There, he claimed that all three attorneys performed deficiently either by failing to convey plea offers or by failing to finalize a plea deal and that Gallon performed deficiently at trial by failing to make certain objections.  Dkt. 7-1, Pet'r's Appeal Br., at 14-18; Dkt. 7-8, OCCA Op., at 2-3.  The OCCA rejected the Sixth Amendment claim.  Relying on the trial court's findings of fact that were made following an evidentiary hearing, and the state-court record as a whole, the OCCA determined there was "no merit to [White's] allegations of deficient performance in any of his trial counsel's handling of the State's offer to plead."  Dkt. 7-8, OCCA Op., at 2-3.  As for Gallon's allegedly deficient performance at trial, the OCCA determined Gallon's failure to object to the jury instruction on the range of punishment was not deficient because the instruction was a correct statement of the law.  *Id.* at 3.  The OCCA further determined Gallon did not perform deficiently by failing to object to the admission of other-crimes evidence because that evidence was properly admitted at trial.  *Id.*

11

White argues that the OCCA "ignored the facts" in rejecting his Sixth Amendment claim and "tied the hands of the lower court by restricting the review of facts to only [Gallon's] representation" when it was the "inappropriate actions" of Baker and Griffin that violated his constitutional rights. Dkt. 1, Pet., at 7. He further argues that the OCCA's decision does not "comply" with clearly established law because the record shows (1) that he would have accepted the plea offer for a life sentence with all but the first 12 years suspended had Griffin conveyed that offer and (2) that he did accept the offer when it was conveyed by Baker but she failed to finalize the paperwork. *Id.* at 8; Dkt. 17, Reply, at 1-5. Finally, White argues he was denied due process at the evidentiary hearing. Dkt. 1, Pet., at 8; Dkt. 17, Reply, at 1-10.

For several reasons, the Court agrees with Crow that White is not entitled to habeas relief on claim one. First, to the extent White contends his due process rights were violated at the evidentiary hearing on his Sixth Amendment claim because the trial court narrowly focused on Gallon's efforts, or lack of effort, to negotiate a plea, that portion of claim one does not state a cognizable federal habeas claim because it does not challenge the validity of his state-court judgment.[6] *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("[B]ecause the constitutional error [the petitioner] raises focuses only on the State's post-conviction remedy and

---

[6] White appears to suggest, and Crow addresses, whether the trial court improperly truncated the evidentiary hearing based on the remand order and the apparent agreement by the prosecutor and appellate counsel that the scope of the hearing was limited to developing evidence regarding Gallon's representation during plea negotiations. Dkt. 1, Pet., at 6-8; Dkt. 7, Resp., at 9-10; Dkt. 17, Reply, at 1-10. But, as the Court reads the state-court record, any such limitation on the scope of the hearing would have been reasonable because the OCCA had evidence before it regarding the efforts Baker and Griffin made to negotiate a plea, *see* Dkt. 7-2, Appl. for Evid. Hr'g, at 14-70, and had the trial transcripts available to evaluate Gallon's performance at trial. In any event, as Crow points out, the trial court made factual findings as to Baker's and Griffin's representation because, as the trial court recognized, the OCCA could not make a decision on the Sixth Amendment claim "in the vacuum" by focusing solely on Gallon's communications with White about a potential plea deal. Dkt. 7-5, District Court Order, at 4.

not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim.").

Second, White cannot show that the OCCA's decision is either contrary to or an unreasonable application of clearly established Federal law. The state-court record demonstrates that the OCCA applied the legal principles from *Lafler*, *Frye*, and *Strickland* when it considered and rejected his Sixth Amendment claim. Significantly, in its order granting White's request for an evidentiary hearing to develop that portion of his claim relating to Gallon's performance during plea negotiations, the OCCA identified six specific questions to be addressed at the hearing, the substance of which flows directly from *Lafler* and *Frye*. The OCCA's remand order directed the trial court to address whether (1) Gallon failed to convey a plea offer and request a plea hearing, (2) White rejected any offer conveyed by Gallon, (3) White would have accepted a plea offer had it been conveyed by Gallon, (4) any plea offer was outstanding when Gallon was appointed or any offers had been withdrawn at that point, (5) any outstanding offer conveyed by Gallon and accepted by White would have been cancelled by the State, and (6) the trial court would have accepted a plea bargain agreed to by the parties. Dkt. 7-4, OCCA Order, at 2-3; Dkt. 7-5, District Court Order, at 3-4. The OCCA's framing of these questions clearly shows that the OCCA understood the controlling legal principles from *Lafler* and *Frye*, and the OCCA's decision shows that it reasonably applied those principles, along with *Strickland*'s analytical framework, when it considered whether any of the attorneys appointed to represent White performed deficiently or

prejudicially with respect to communicating plea offers to White.[7]

Third, contrary to White's argument that the OCCA "ignored the facts," the OCCA's decision that none of White's attorneys "failed to convey, or otherwise mishandled, any valid offer to plead guilty," Dkt. 7-8, OCCA Op., at 2-3, does not rest on an unreasonable determination of the facts.  Following the evidentiary hearing, the trial court found that before trial, the State made a plea offer of a life sentence with all but the first 12 years suspended and that White "rejected said offer several times."  Dkt. 7-5, District Court Order, at 1.  As for the six questions propounded by the OCCA, the trial court found:  (1) at the time Gallon was appointed to represent White, "there was no plea offer from the [State] to convey," (2) as a result, there was no offer for White to reject, but testimony from the hearing established that White told Gallon he had no interest in a plea offer, (3) it was not likely that White would have accepted a plea had Gallon conveyed a plea offer because "plea paperwork" in the state-court record demonstrated that the State originally offered a plea that White "rejected not only once, but twice with his first attorney," that the plea offer "was conveyed a third time by his second attorney" and White "refused" it, (4) there was no plea offer "on the table" when Gallon was appointed, (5) in the absence of an outstanding offer, the court could only speculate as to whether the State would have withdrawn the offer had White accepted it, and (6) had the parties presented a plea agreement, the court would have accepted it.  Dkt. 7-5, District Court Order, at 2-4.  Finally, in addition to answering the six questions identified in the OCCA's remand order, the trial court found that White's case had

twice been set for plea and at the last minute, before the plea hearing and after the

---

[7] To the extent White's argument rests on the OCCA's failure to explicitly cite *Strickland*, *Lafler*, or *Frye* in its decision, the OCCA was not required to cite these cases in rendering its decision.  *See Matthews v. Workman*, 577 F.3d 1175, 1183 n.2 (10th Cir. 2009) (noting that "state courts need not refer to, or even be aware of, controlling Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them'" (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002))).

paperwork had been done, refused to do the deal, and the second time kept stating he didn't understand the plain explanation of his rights, causing a mental evaluation to be done, and then refusing to talk to his attorney, becoming verbally abusive and writing to the Court seeking discharge of his court-appointed attorney.  Having a second attorney, who conveyed the offer with the recommendation that he take it given the evidence and his record, which precipitated a second, I won't talk to you, and a letter to discharge her after verbally attacking her.  The likelihood is that if J. Ken Gallon had sought a plea offer, that he would have been subject to the same position as the prior two attorneys.

Dkt. 7-5, District Court Order, at 4.  Based on these findings, the trial court concluded, "under the *Strickland* case and its progeny, J. Ken Gallon's representation of [White] was not deficient and a new trial or modification to a sentence that [White] refused three times but now wishes that he had is not justified."  *Id.* at 5.

On habeas review, the trial court's factual findings (which provide the factual underpinnings for the OCCA's decision) are presumed correct and White presents no clear and convincing evidence to rebut that presumption.  *See* 28 U.S.C. § 2254(e)(1).  Moreover, the evidence White submitted with his application for an evidentiary hearing and the transcript from the evidentiary hearing fully supports those factual findings.  Dkt. 7-2, Appl. for Evid. Hr'g, at 14-70; Dkt. 8-15, Tr. Evid. Hr'g, generally.  The OCCA did not ignore the facts, as White argues; instead, the OCCA reasonably relied on facts that are grounded in the record to support the OCCA's determination that neither Baker nor Griffin (nor Gallon) "failed to convey, or otherwise mishandled, any valid offer to plead guilty."  Dkt. 7-8, OCCA Op., at 2-3.

For these reasons, the Court finds that § 2254(d) bars relief on White's Sixth Amendment claim and the Court therefore denies the petition as to claim one.

**B.    Claim two:  Erroneous jury instruction**

In his second claim, White argues he was deprived of his Sixth and Fourteenth Amendment rights to a fair sentencing proceeding and due process because the trial court gave a faulty jury instruction on the range of punishment.  Dkt. 1, Pet., at 11-15.

As Crow contends, a federal habeas court "has a limited role" in evaluating jury instructions that are given in a state criminal proceeding. Dkt. 7, Resp., at 18 (quoting *White v. Medina*, 464 F. App'x 715, 719 (10th Cir. 2012) (unpublished)). That limited role requires the federal court to determine whether the alleged jury-instruction error "render[ed] the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense." *White*, 464 F. App'x at 719.[8]

Here, during the second stage of White's bifurcated trial, the trial court instructed the jury that "[t]he punishment for Child Sexual Abuse after two previous convictions is imprisonment in the State penitentiary for a term of twenty (20) years to life imprisonment." Dkt. 8-2, O.R. vol. 2, at 105 [261]. White challenged this instruction on direct appeal but because trial counsel failed to object to the instruction, the OCCA reviewed the alleged error under its plain-error test. Dkt. 7-8, OCCA Op., at 3-4. Applying this test, the OCCA concluded that the instruction was a correct statement of the law and thus found no error. *Id.*

Though not clear, White appears to argue (1) that the OCCA considered the alleged jury-instruction error only under the *Strickland* analysis, (2) that the OCCA should not have reviewed the alleged error only for plain error, and (3) that the OCCA misapplied state law when it determined the jury instruction correctly instructed the jury on Oklahoma law. Dkt. 1, Pet., at 11-15. None of these arguments persuade the Court that the challenged instruction deprived White of a fair trial.

As previously stated, this Court's role in evaluating jury instructions in a habeas proceeding is limited. That role is even more limited when, as here, the OCCA effectively applies the federal-

---

[8] The Court cites this unpublished decision as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

due process standard by reviewing an alleged jury-instruction error under the OCCA's plain-error test. *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005). In *Thornburg*, the U.S. Court of Appeals for the Tenth Circuit found "no practical distinction between" the OCCA's plain-error test and the federal due-process test and held that when the OCCA reviews a claim for plain error, the federal court "must defer" to the OCCA's ruling, under § 2254(d), unless the OCCA's application of the federal due-process test is objectively unreasonable. *Id.*

The OCCA found no error, plain or otherwise, because it found that the jury instruction was a correct statement of the law. Dkt. 7-8, OCCA Op., at 3-4. The OCCA, not this Court, has the final say in interpreting state sentencing provisions. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). And, because the OCCA found that the trial court properly instructed the jury on the sentencing range, it was not objectively unreasonable for the OCCA to conclude that White suffered no due-process violation arising from the challenged jury instruction.

Based on the foregoing, the Court finds that § 2254(d) bars relief and therefore denies the petition as to claim two.

**C.    Claim three:  Erroneous admission of other-crimes evidence**

In his third claim, White asserts that the trial court erroneously admitted other-crimes evidence at trial,[9] but he does not clearly identify the evidence he believes should have been excluded. Dkt. 1, Pet., at 16-17. On direct appeal, White challenged the admission of (1) evidence

---

[9] Under Oklahoma law, other crimes evidence may be admissible under a res gestae exception or under OKLA. STAT. tit. 12, § 2404(B). *Baird v. State*, 400 P.3d 875, 885 (Okla. Crim. App. 2016).

that White physically abused C.C. and her brother, B.W., (2) evidence that White's house burned down sometime after C.C. disclosed White's sexual abuse but before law enforcement officers obtained and attempted to execute a warrant to search the house, and (3) evidence that C.C. spoke about the sexual abuse with "other attorneys and talked about it in court."  Dkt. 8-1, Pet'r's Appeal Br., at 26-31.

As Crow argues, the admission of evidence is generally a matter of state law and ordinarily does not present a cognizable claim for federal habeas review.  Dkt. 7, Resp., at 21-23; *see McGuire*, 502 U.S. at 56 (noting that the determination of whether evidence was properly admitted under state law "is no part of a federal court's habeas review of a state conviction").  As a result, federal habeas courts "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [the petitioner] due process of law." *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (quoting *Duvall v. Reynolds*, 139 F.3d 768, 787 (10th Cir. 1998)).  This means that a federal court ordinarily must determine whether, when "considered in light of the entire record, [the admission of other-crimes evidence] resulted in a fundamentally unfair trial." *Id.*

White argues that the OCCA failed to review this claim on the merits or apply any standard of review.  Dkt. 1, Pet., at 16-17.  But, as with the alleged jury-instruction error asserted in claim two, the OCCA found that no objection was lodged at trial and applied its plain-error test to determine whether White was deprived of a fair trial.  Dkt. 7-8, OCCA Op., at 4.  The OCCA determined the challenged evidence was properly admitted at trial and thus found "no plain or obvious error" requiring reversal of White's conviction. *Id.* at 3-4.

As just discussed, *Thornburg* instructs this Court to defer to the OCCA's decision

18

regarding the alleged due-process violation unless the OCCA unreasonably applied the federal due-process standard.  422 F.3d at 1125.  Having read the trial transcripts in their entirety, this Court finds nothing objectively unreasonable about the OCCA's decision that White was not deprived of a fair trial through the admission of the challenged evidence.

C.C., who was 16 years old at the time of trial, testified at length, in detail, and according to the jury's verdict, credibly, about the multiple acts of sexual abuse White committed against her when she was 13 years old.  Dkt. 8-10, Tr. Trial vol. 1, at 116, 122, 135-45, 151-59, 164-81, 184-85, 191-99, 203, 228-32.  The challenged evidence came in largely through C.C.'s testimony.  As to evidence of physical abuse, C.C. testified her relationship with White was "good and bad" before he began sexually abusing her and explained that White "hit" CC and her brother, B.W., "a lot." Dkt. 8-10, Tr. Trial vol. 1, at 147.  One time, when C.C. refused White's request for fellatio, White slammed her head against a horse trailer with "[e]nough force to make it bleed."  *Id.* at 169-70. C.C. also testified that, on one occasion, White either told her to get in the bathroom or came into the bathroom when C.C. was in the bathroom and that he hit her with her sister's belt when she refused to take off her clothes.  *Id.* at 180, 182.  White also backhanded her in the face during the same bathroom incident, but C.C. could not recall whether White did so before or after he digitally penetrated C.C.'s anus.  *Id.* at 184.  White's son, B.W., also testified about physical abuse. Specifically, when asked why he did not sooner disclose that he once saw White put his hands down C.C.'s pants, B.W. testified he was afraid that White might hit him.  Dkt. 8-11, Tr. Trial vol. 2, at 16 [255].  On this record, C.C.'s testimony about White's physical abuse was inextricably intertwined with her testimony about instances of sexual abuse, and B.W.'s testimony said nothing that C.C. had not already said.

As for challenged evidence related to prior court proceedings, when C.C. began to testify

about whether she had told anyone else about the sexual abuse, trial counsel objected to the admission of any testimony about "the deprived case," presumably a prior civil proceeding to remove C.C. from the home.  Dkt. 8-10, Tr. Trial vol. 1, at 205-06.  After that objection, the prosecutor elicited testimony from C.C. that she told Kristi about the abuse during a forensic interview and also talked about the abuse "in court" and "with the other attorney [she] had at the time."  *Id.* at 206-07.  As the prosecutor continued with the line of questioning, the trial court intervened, and the prosecutor wrapped it up by eliciting testimony that C.C. had testified about the abuse one other time.  *Id.* at 207-09.  It is not clear from the record how the admission of this testimony, even if improper, could have been prejudicial.

Finally, evidence that the family home, where several instances of the sexual abuse occurred, burned to the ground was introduced through the testimony of Todd Stanley, a lieutenant with the Delaware County Sheriff's Department.  Dkt. 8-11, Tr. Trial vol. 2, at 81 [320].  Stanley testified that C.C.'s mother and White agreed to let Stanley search the house after he spoke with them about C.C.'s allegations against White sometime in early April 2012.  *Id.* at 85 [324], 87 [326].  When Stanley arrived on April 9, 2012, he spoke with White and White signed a written form consenting to the search.  *Id.* at 88-89 [327-28].  Stanley testified he could not search the house for evidence on April 9 because "[t]he house had burned down," but he did recover some evidence from a horse trailer, namely, a horse blanket that C.C. had described as being used in one instance of sexual abuse.  *Id.* at 89-93 [328-32].  Photographs admitted at trial reflect that the house burned down sometime between April 3 and April 9, 2012.  *Id.* at 90-91 [329-30].

In light of C.C.'s detailed testimony about the acts of sexual abuse White committed against her, the Court finds that evidence that White also physically abused C.C., that a law enforcement officer could not search the home for evidence because the home had been destroyed

20

by a fire, and that C.C. spoke with other attorneys during court proceedings after she was removed from the family home likely had little, if any, prejudicial impact.  Thus, the Court cannot say that the OCCA's rejection of White's due-process claim arising from the admission of this evidence was objectively unreasonable.

Because the OCCA's rejection of White's due-process claim is objectively reasonable, § 2254(d) bars relief and the Court therefore denies the petition as to claim three.

**D.      Claim four:  Erroneous exclusion of defense evidence**

Next, White argues the trial court violated his constitutional right to present a defense by excluding evidence relevant to his defense.  Dkt. 1, Pet., at 19-21.  In the petition, he refers to evidence "of false and unfounded accusations against others" and "false past accusations on the part of the accuser."  *Id.* at 20-21.  On direct appeal, White specifically challenged the exclusion of evidence (1) that C.C. made prior false allegations of sexual abuse against Anthony Lee Taylor and (2) that C.C. created false Facebook accounts to engage in sexual encounters.  Dkt. 8-1, Pet'r's Appeal Br., at 34.

The clearly established federal law governing this particular claim can be found in *Holmes v. South Carolina*, 547 U.S. 319 (2006).  In *Holmes*, the Supreme Court stated the well-established proposition that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  547 U.S. at 324 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).  But the *Holmes* Court also reiterated that this right is not absolute; rather, "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  *Id.* (alteration in original) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)); *see also Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under

21

standard rules of evidence."); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (identifying a criminal defendant's rights to confront and cross-examine witnesses as "fundamental" trial rights but acknowledging those rights are "not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process"). As the *Holmes* Court stated, "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." 547 U.S. at 326.

As relevant to White's fourth claim, the State filed two pretrial motions, seeking to exclude (1) anticipated testimony from Anthony Taylor Lee that C.C. previously accused Lee of sexually abusing her, and (2) anticipated testimony from C.C.'s mother and C.C. that C.C. created false Facebook accounts and engaged in "sexual interactions" with other Facebook participants. Dkt. 8-1, O.R. vol. 1, at 165 [154]; Dkt. 8-2, O.R. vol. 2, at 56 [212]. The trial court held a hearing on both motions before trial. Regarding Lee's anticipated testimony, the court found the State's motion was moot after trial counsel confirmed that a private investigator could not locate Lee and Lee would not be testifying at trial. Dkt. 8-10, Tr. Trial vol. 1, at 96-97. But the court overruled the motion, in part, concluding that trial counsel would be permitted to elicit testimony from C.C. and her mother as to whether C.C. made prior false allegations against any other person. *Id.* at 97-102. The trial court also ruled that it would allow testimony that C.C. created false Facebook accounts, but it granted the State's motion to exclude evidence relating to her motive for creating those accounts and "[a]ny evidence concerning attempts [] to engage in sexual interactions with other Facebook participants." Dkt. 8-10, Tr. Trial vol. 1, at 102-05.

During cross-examination, trial counsel elicited testimony from C.C. that she was not always truthful, that she had lied to her mother about taking an iPod so that she would not get into trouble, and that she had created fake Facebook accounts.  Dkt. 8-10, Tr. Trial vol. 1, at 212-15, 220.  C.C. testified that she knew Anthony Taylor Lee as a family friend and that Lee lived with her family when C.C. was nine or ten years old.  *Id.* at 229.  When trial counsel asked C.C. if she had any "complaints about" or "problems with" Lee, C.C. responded, "No, sir."  *Id.* at 229-30.  The prosecutor elicited additional testimony from C.C. on redirect examination about her creation of false Facebook accounts and about the time she lied to her mother about an iPod.  *Id.* at 234-35.  B.W. testified that he was initially upset with C.C. when she disclosed that White was sexually abusing her because C.C. "normally told lies."  Dkt. 8-11, Tr. Trial vol. 2, at 24 [263].  C.C.'s mother also testified that C.C. "had lied to [her] about a few things," specifically, about creating fake Facebook accounts and about taking an iPod out of her mother's room.  *Id.* at 45-46 [284-85].

Applying *Crane* and *Holmes*, the OCCA found that the trial court did not abuse its discretion in excluding the evidence White claimed he should have been permitted to present.  Dkt. 7-8, OCCA Op., at 4-5.  The OCCA characterized that evidence as "either inadmissible or only marginally relevant, and potentially confusing to the jury about the issues at trial."  *Id.*  The OCCA also reasoned that even without the evidence White challenged as improperly excluded, "'there was sufficient information presented to the jury to allow it to evaluate' the complainant's credibility" and thus found no Sixth Amendment violation.  *Id.* at 5 (quoting *Mitchell v. State*, 270 P.3d 160, 178 (Okla. Crim. App. 2011)).

White appears to argue that the OCCA should not have rejected his claim because it was up to the jury, not the trial court, to determine whether evidence of C.C.'s prior false allegations was relevant.  Dkt. 1, Pet., at 20-21.  However, as Crow contends, that argument is incorrect.  Dkt.

7, Resp. at 27; *see Crane*, 476 U.S. at 689-90 (stating that "the Constitution leaves to the judges who must make [evidentiary] decisions wide latitude to exclude evidence that is . . . only marginally relevant. . . ."). More importantly, as Crow argues, White does not even attempt to make the showings necessary to overcome § 2254(d)'s bar to habeas relief as to this claim. Dkt. 7, Resp., at 28. Nor could he prevail if he attempted to do so. Because the OCCA expressly cited the legal principles from *Crane* and *Holmes*, White must show either (1) that the OCCA's decision is objectively unreasonable or (2) that the OCCA's decision is based on a misreading of the facts relevant to this claim. But, on the record presented, it was entirely reasonable for the OCCA to conclude that even without the excluded evidence the jury had sufficient evidence to evaluate C.C.'s credibility. Thus, it was also entirely reasonable for the OCCA to conclude that the exclusion of the challenged evidence did not violate White's right to present his theory of defense, namely, his theory that C.C. falsely accused White.

Because the OCCA's decision on this claim was objectively reasonable, § 2254(d) bars relief, and the Court denies the petition as to claim four.

### E.      Claim five:  Excessive sentence

In his fifth claim, White acknowledges that his 40-year sentence "is within legal range" but he argues it is excessive under the circumstances. Dkt. 1, Pet., at 23-26. The OCCA rejected White's claim that his sentence was excessive, finding that it was within the statutory range of punishment and that it did not shock the OCCA's conscience. Dkt. 7-8, OCCA Op., at 5.

For two reasons, the Court finds White is not entitled to habeas relief on claim five. First, as Crow contends, White's sentencing claim is not a cognizable habeas claim. Dkt. 7, Resp., at 33-34. Federal courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the

sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). Here, White was convicted of one count of child sexual abuse, in violation of Okla. Stat. tit. 21, § 843.5(E), after former conviction of two or more felonies. Dkt. 8-2, O.R. vol. 2, at 114 [270]. As White acknowledges, and as the OCCA found, White's sentence of 40-years' imprisonment falls within the range of punishment authorized by state law. *See* Okla. Stat. tit. 843.5(E) (authorizing sentence "not exceeding life imprisonment").

Second, contrary to White's argument, the OCCA's decision that White's sentence was "not shocking to the conscience" reflects that the OCCA applied the correct legal principles when it considered and rejected White's argument that the sentencing court violated his right to substantive due process by imposing the sentence recommended by the jury. Dkt. 7-8, OCCA Op., at 5; *see Leatherwood v. Allbaugh*, 861 F.3d 1034, 1046 n.11 (10th Cir. 2017) ("Substantive due process . . . guards against the arbitrary exercise of governmental power that shocks the conscience."). Having reviewed the entire state-court record, the Court is not persuaded that the OCCA's application of the federal standard for substantive-due-process claims was objectively unreasonable or that it relied on an unreasonable determination of the facts. Thus, to the extent White's fifth claim could be construed as asserting a cognizable due-process claim, § 2254(d) bars habeas relief.

For these reasons, the Court denies the petition as to claim five.

## F.  Claim six:  Cumulative error

In his sixth and final claim, White contends that the cumulative effect of trial counsel's ineffectiveness, the trial court's allegedly erroneous evidentiary rulings, and the trial court's sentencing decision warrants federal habeas relief. Dkt. 1, Pet., at 27.

"A cumulative-error analysis merely aggregates all the errors that individually have [been]

found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Hanson v. Sherrod*, 797 F.3d 810, 852 (10th Cir. 2015) (quoting *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003)).  But courts "cumulate error only upon a showing of at least two actual errors."  *Id.*  Because this Court has identified zero errors, the Court agrees with the OCCA that there are no "errors to accumulate."  Dkt. 7-8, OCCA Op., at 5.  The Court therefore denies the petition as to claim six.

## IV.

After careful review of the state-court record, White's claims, and the parties' arguments, the Court concludes that White has not shown that his custody under the challenged state-court judgment violates the Constitution or federal law.  28 U.S.C. § 2254(a).  The Court therefore denies his petition for writ of habeas corpus.  Because the Court denies the petition, the Court denies as moot White's pending motion for appointment of counsel.

### Certificate of Appealability

When, as here, a district court enters a final order adverse to the habeas petitioner, the court must consider whether to issue a certificate of appealability.  28 U.S.C. § 2253(c); Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*.  A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When the district court rejects a petitioner's constitutional claims on the merits, the applicant must make this showing by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  For the reasons discussed in the analysis section of this opinion, the Court finds that reasonable jurists would not debate the correctness of

this Court's assessment of White's constitutional claims.  The Court therefore declines to issue a certificate of appealability as to any issues asserted in the petition.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.  The Clerk of Court shall note on the record the substitution of Scott Crow in place of Joe Allbaugh as party respondent.

2.  The petition for writ of habeas corpus (Dkt. 1) is **denied**.

3.  White's motion for appointment of counsel (Dkt. 20) is **denied as moot**.

4.  A certificate of appealability is **denied**.

5.  A separate judgment shall be entered in this matter.

**DATED** this 13th day of October 2020.

TERENCE C. KERN
United States District Judge